PERSICHILLO, Appellant,

v.

MOTOR CARRIER SERVICE, INC. et al., Appellees.

[Cite as *Persichillo v. Motor Carrier Serv., Inc.*, 156 Ohio App.3d 383, 2004-Ohio-1042.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–03–043.

Decided March 5, 2004.

Kollin L. Rice, for appellant.

Jennifer J. Dawson and Roman Arce, for appellees.

SINGER, Judge.

{¶ 1} This matter comes before the court on appeal from the Wood County Court of Common Pleas, wherein appellees' motion for summary judgment was granted. For the reasons stated herein, this court affirms the judgment of the trial court.

{¶ 2} On December 10, 2001, appellant, Steve Persichillo, filed a sexual harassment complaint against his former employer, appellee Motor Carrier Services, Inc., and his former supervisor, appellee Kevin Tomlinson. In his complaint, appellant alleged that during the course of his employment, he was subjected to unwelcome touching and sexual advances by Tomlinson resulting in appellant's constructive discharge from employment in July 2000.

{¶ 3} On December 9, 2002, appellees filed a motion for summary judgment. In support, appellees filed the deposition transcripts of appellant and Tomlinson. Appellant testified that in the fall of 1999, Tomlinson hired appellant to service trucks. Within the first two weeks of appellant's employment, Tomlinson engaged in the following objectionable behaviors. Tomlinson frequently touched appellant's arms and rubbed his shoulders. Tomlinson often watched appellant change his clothes in the break room. Appellant claimed that Tomlinson purposely rubbed up against him when he was on a ladder changing a light bulb. Appellant claimed that Tomlinson would randomly approach him and make obscene gestures suggestive of oral sex. Appellant claimed that Tomlinson left an unwanted collection of pornographic videotapes on appellant's car seat, though appellant admitted he did not see Tomlinson leave the tapes in the car. Appellant also testified that Tomlinson bought him a flashlight for Christmas, asking, "[I]t came from Santa, will you sit on my lap now?"

{¶ 4} Appellant also described an incident at the company involving a truck driver named Yassin. One day, according to appellant, Yassin put his arm around appellant. On another day, Yassin rubbed appellant's neck and referred to him as "cutie." Appellant testified that this particular incident "put [him] over the edge" and that he walked off of the job that very day.

{¶ 5} Appellant testified that it was known within the company that he was being sexually harassed. Appellant identified the employee acknowledgement form he had signed when he was first hired indicating that he had received the employee handbook. In signing the form, appellant agreed that it was his responsibility to read and comply with the policies in the handbook and any revisions made to it. With regard to sexual-harassment claims, the handbook read that an employee who wants to report an incident of sexual or other

harassment should promptly report the matter to his or her supervisor. When asked why he had not reported the Yassin incident to a supervisor before he abruptly walked off the job, appellant responded, "[I] chose the way I chose. * * * I chose to get the hell out of there."

{¶ 6} Tomlinson testified that he had been married to his wife Elizabeth for 13 years and that they have three children. He testified that he never rubbed appellant's shoulders but that he may have touched appellant's shoulders in a friendly manner. He denied that he purposely watched appellant change his clothes in the break room, but he acknowledged that he may have occasionally walked through the break room when appellant was changing his clothes. Tomlinson testified that he once climbed up a ladder to help appellant install a light, but he denied rubbing up against appellant's body. Tomlinson stated that he may have "bumped" appellant while on the ladder. Tomlinson denied making obscene gestures in front of appellant and he denied placing pornographic videotapes in appellant's car. As for the flashlight, Tomlinson testified that the company purchased the flashlights for all employees in the summer of 1999. When, in July 1999, appellant asked Tomlinson where the flashlight had come from, Tomlinson testified that he jokingly responded that the flashlight came from Santa. Tomlinson, however, denied that he ever invited appellant to sit on his lap.

{¶ 7} Tomlinson testified that on the day he quit, appellant was upset that a truck driver had referred to him as "cutie." Tomlinson testified that he did not hear the verbal exchange between appellant and the driver, although the driver admitted that he had referred to appellant as "cutie."

{¶ 8} On April 30, 2003, the trial court granted appellees' motion for summary judgment. Appellant now appeals, setting forth the following assignment of error:

{¶ 9} "The Wood County Common Pleas Court erred in granting summary judgment on the same-sex harassment claims."

{¶ 10} Appellant contends that the trial court relied on the wrong standard in granting summary judgment to appellees. Appellant contends that the trial court should have evaluated appellant's claims based on the totality-of-the-circumstances standard.

{¶ 11} On review, appellate courts employ the same standard for summary judgment as do trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. The motion may be granted only when it is demonstrated "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse

to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(E).

{¶ 12} R.C. 4112.02(A) states that it shall be an unlawful discriminatory practice for "any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 13} The Ohio Supreme Court has held that "[a] plaintiff may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination 'because of * * * sex' by proving either of two types of sexual harassment: (1) 'quid pro quo' harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) 'hostile environment' harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment." *Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 729 N.E.2d 726, paragraph one of the syllabus. It is the second type of harassment of which appellant complains in the case before us.

{¶ 14} The Ohio Supreme Court in *Hampel,* supra, set forth the conditions that a plaintiff must show in order to establish a claim of hostile-environment sexual harassment: "(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate action." *Hampel,* paragraph two of the syllabus.

{¶ 15} Appellant must first show that he was subjected to unwelcome harassment. Sexual harassment is defined by the federal EEOC regulations as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." Section 1604.11(a), Title 29, C.F.R. The Supreme Court of Ohio has held, however, that harassing conduct that is simply abusive, with no sexual element, can support a claim for hostile-environment sexual harassment if it is directed at the plaintiff because of his or her sex. *Hampel,* supra, 89 Ohio St.3d at 180, 729 N.E.2d 726.

{¶ 16} In granting appellees' motion for summary judgment, the trial court found that there was insufficient evidence to establish that Tomlinson's conduct was directed toward appellant because of his sex. The trial court cited *Budenz v. Sprint Spectrum* (D.Kan.2002), 230 F.Supp.2d 1261, 1273, which states:

{¶ 17} "The Supreme Court has suggested three evidentiary routes to prove conduct is 'because of sex' in same-sex cases: (1) evidence that the harasser is homosexual and the harassment is motivated by sexual desire; (2) evidence that the harasser is motivated by a hostility to the presence of the victim's gender in the workplace; or (3) evidence that the harasser treated males and females differently in a mixed-gender workplace." Citing *Oncale v. Sundowner Offshore Serv.* (1998), 523 U.S. 75, 80–81, 118 S.Ct. 998, 140 L.Ed.2d 201.

{¶ 18} The trial court found that there was no evidence to establish that Tomlinson is homosexual, that his acts were motivated by sexual desire for appellant, or that Tomlinson was hostile to the presence of men in the workplace. This court has thoroughly reviewed the record in this case and can find no disputed material facts that would preclude the grant of summary judgment in light of the foregoing law. Accordingly, appellant's sole assignment of error is found not well taken.

{¶ 19} On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Wood County Common Pleas Court is affirmed. Costs assessed to appellant.

Judgment affirmed.

PETER M. HANDWORK, P.J., and MARK L. PIETRYKOWSKI, J., concur.