KILGORE, Appellant, et al.,

v.

ETHICON ENDO–SURGERY, INC., Appellee, et al.

[Cite as *Kilgore v. Ethicon Endo–Surgery, Inc.,* 172 Ohio App.3d 387, 2007-Ohio-2952.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060233.

Decided June 15, 2007.

---

Glen E. Hazen, Jr., for appellant.

Waite, Schneider, Bayless & Chesley Co., L.P.A., and Melanie S. Corwin, for appellee.

MARK P. PAINTER, Presiding Judge.

{¶ 1} Can bizarre and sometimes threatening behavior of a co-worker constitute sexual harassment? In this case, no.

{¶ 2} Plaintiff-appellant Karen Kilgore appeals the trial court's grant of summary judgment to defendant-appellee Ethicon Endo–Surgery, Inc. ("Ethicon"), a Johnson & Johnson company. (Kilgore and Ethicon are the only two litigants remaining in this action.) Kilgore argues that the trial court erred in granting summary judgment because (1) the alleged discriminatory behavior by Jim Moore was both "based on sex" and "severe or pervasive," (2) Ethicon failed to provide a safe work environment, (3) Kilgore suffered from both intentional and negligent infliction of emotional distress, and (4) Ethicon negligently supervised Moore.

{¶ 3} Kilgore withdrew her third and fourth assignments of error at oral argument, and thus we need not address them—the statute of limitations had run on those claims. As to the remaining claims, the trial court did not err in granting summary judgment. Although the acts of Moore were odd and creepy, they were not so severe or pervasive that they created a hostile work environment. And Moore's illegal acts toward Kilgore occurred after he had been terminated.

## I. A Creepy Guy

{¶ 4} Ethicon hired Jim Moore in 1996. From the outset of his employment, Moore's behavior ranged from socially awkward to bizarre and possibly intimidating. In June 1996, two female Ethicon employees accused Moore of unwelcome dinner requests, unsolicited visits to their cubicles, and unwanted touching that involved placing his arm around one of the women's shoulders. Moore requested that his desk be moved as a result of the complaints.

{¶ 5} Later that year, Moore ran into another female co-worker at a local bar. He approached her, told her that he recognized her from work, and wanted to know if her reputation was true. When she asked about the reputation, he responded that he had heard that she was a "bitch." Moore was counseled by his supervisors for unprofessional conduct.

{¶ 6} In spite of his behavior, Moore was undeterred from applying for two open positions at Royston, another Johnson & Johnson company. But his "contentious and aggressive" behavior kept him from getting any consideration for these positions. Moore's further hostile interactions with people led to an employment-assistance plan and, in October 1997, a warning letter that stated that "continued overreactions will put your employment at risk."

{¶ 7} In January 1999, a female co-worker, Trisha Griffith, complained that Moore had inappropriately offered to give her a ride, would stand so close to her that she could feel his breath, and had stared at her. After she filed a complaint, she found a condom placed on her desk that she attributed to Moore. Moore was advised to be more professional and to keep his distance from Griffith.

{¶ 8} As a result of four incidents of inappropriate, harassing behavior, Moore received a written warning in February 1999 and was encouraged to take interpersonal-skills training offered by Ethicon.

{¶ 9} Two months later, a former employee of an Ethicon supplier reported that Moore had called her at home and left a message on her answering machine that had made her feel uncomfortable. Moore's supervisors counseled him to be more appropriate with suppliers and their employees.

{¶ 10} In September 1999, a female Ethicon employee, Nina Maitlin, brought her baby to work. Moore told Maitlin that the baby was disturbing him, and he continued to walk past her cubicle and to glare at her, making her feel uncomfortable. As a result of Maitlin's complaint, security personnel performed extra tours in the area.

## II. Kilgore's Encounters with Moore

{¶ 11} One month later in October 1999, Kilgore had her first encounter with Moore. Kilgore had brought her sick four-year-old child to work. While she was answering a phone call, she noticed that Moore had bent over and was talking to her daughter. She asked if she could help him, but he said no. Moore stayed and stared at Kilgore, making her feel uncomfortable. He then walked by Kilgore's cubicle area eight to nine more times during the rest of the day and glared at her as he passed.

{¶ 12} After Kilgore reported Moore's behavior, she began to receive phone calls at work accompanied by heavy breathing. During another incident around this time, Moore came up behind Kilgore while she was at the copy machine and stood so close that she could feel his breath on her neck.

{¶ 13} After these incidents were reported, Kilgore was assured that Moore had been told not to come into her work area. Because of these Kilgore incidents and the Maitlin incident, Moore received a written warning, and interpersonal-skills training was recommended. He was also to meet with a supervisor once every two weeks to discuss his progress.

{¶ 14} Kilgore was then promoted to another position at Ethicon, and she moved to another building in the Ethicon complex. She did not have any contact with Moore for three years. And there were no other complaints made about Moore during these three years. He was "keeping his nose clean."

{¶ 15} But in August 2002, Kilgore began to see Moore again in common areas of the Ethicon complex. Kilgore complained to the human resources department that whenever she saw him, Moore would glare at her and give her "mean, angry looks." At the same time as these staring incidents, Kilgore started receiving phone calls at work where someone would either hang up or breathe heavily into the phone without speaking. On one occasion, the speaker stated, "I know where you're at and I know what you're doing." When Kilgore called Moore's office, and he answered "Jim Moore," she recognized his voice as that of the person who had called her.

{¶ 16} Because of these incidents, Moore's supervisor called a disciplinary meeting on October 28, 2002. Moore was formally warned than any behavior he

was engaging in that could be deemed harassing, intimidating, or staring should be stopped immediately.

{¶ 17} The very next day after Moore was formally warned, another incident occurred. Kilgore and Julie Crawford entered the cafeteria as Moore was eating his lunch. He once again gave an "angry, penetrating stare" as they passed his table. While Kilgore and Crawford were waiting in line to pay the cashier, Moore came up in the line next to them, without any food, and stopped and stared at them. After they paid and sat down to eat their lunch, Moore proceeded to walk around their table and to stare at them.

{¶ 18} On October 30, Kilgore and Melissa Cheeks held a meeting in the cafeteria with other co-workers. Although the cafeteria was almost empty, Moore sat down at the table next to them, positioning himself so he could stare at Kilgore throughout the meeting.

{¶ 19} As a result of these repeated incidents, Ethicon terminated Moore on November 12, 2002. In its EEOC position statement, Ethicon claimed that Moore was fired for "engaging in repeated threatening, harassing and intimidating behavior against female EES [Ethicon] associates despite numerous previous warnings."

### III. Moore's Acts After His Termination

{¶ 20} After Moore was terminated from Ethicon, he placed harassing phone calls including death threats to Kilgore's home phone. The Blue Ash Police Department investigated, and during a search of Moore's trash, officers found maps and directions to Kilgore's home. Moore was arrested and charged with two counts of menacing by stalking,[1] two counts of telecommunications harassment,[2] and one count of possessing criminal tools.[3] He later pleaded guilty to one count of telecommunications harassment.

### IV. Summary–Judgment Standard

{¶ 21} We review summary-judgment determinations de novo, without deference to the trial court's ruling.[4] Summary judgment should be granted only when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that

1. R.C. 2903.211(A).

2. R.C. 2917.21(B).

3. R.C. 2923.24(A).

4. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243.

reasonable minds can only come to a conclusion adverse to the nonmoving party, when viewing the evidence in the light most favorable to the nonmoving party.[5] A party moving for summary judgment bears the initial burden of showing that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial.[6]

## V. Hostile–Work–Environment Claim

{¶ 22} In her first assignment of error, Kilgore maintains that the trial court erred in granting summary judgment to Ethicon because Moore's undisputed acts created a hostile work environment.

{¶ 23} R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of the sex of any person, to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment. This includes subjecting the employee to sexual harassment.[7] The Ohio Supreme Court has determined that "federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. 4112." [8]

{¶ 24} Here, Kilgore alleged a sexually hostile work environment. To establish a claim of a hostile work environment based on sex, Kilgore had to show (1) that the harassment was unwelcome; (2) that the harassment was based on sex; (3) that the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment; and (4) that the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.[9]

{¶ 25} But not all workplace conduct that can be construed as having sexual overtones can be characterized as harassment forbidden by the statute.[10] Rather, the conduct complained of must be severe or pervasive enough to create

---

5. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

6. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

7. See *Peterson v. Buckeye Steel Casings* (1999), 133 Ohio App.3d 715, 723, 729 N.E.2d 813.

8. *Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 175, 729 N.E.2d 726.

9. Id. at 176–177, 729 N.E.2d 726.

10. See *Meritor Sav. Bank v. Vinson* (1986), 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49.

an environment not only that the victim subjectively regards as abusive but also that a reasonable person would find hostile or abusive.[11] Under this standard, conduct that is merely offensive is not actionable.[12]

{¶ 26} And the court must examine the circumstances surrounding the conduct and must consider them within the framework of several factors to determine if the conduct is actionable. These factors include the following: (1) the conduct's frequency, (2) the conduct's severity, (3) whether the conduct was physically threatening or humiliating, and (4) whether the conduct unreasonably interfered with the victim's work performance.[13]

{¶ 27} In the present case, the harassment Kilgore complained of consisted of three incidents in 1999: (1) the incident in which Kilgore brought her child to work and Moore walked by repeatedly and stared at her, (2) the time Moore stood behind Kilgore at the copy machine and breathed on her, and (3) the phone calls that Kilgore received at her desk where the other person on the phone line was breathing. But the phone calls were never traced to Moore. And Ethicon counseled Moore on his interpersonal skills and formally warned him to stop any behavior that might seem to be intimidating.

{¶ 28} Three years passed in which no Ethicon employee complained of Moore's conduct. Then in the fall of 2002, Kilgore complained again that Moore had stared at her on different occasions and had made her feel uncomfortable. She also attributed one harassing phone call to him. After Moore was formally warned again that any behavior he was engaging in that could be deemed harassing, intimidating, or staring should be stopped immediately, and when he continued to have encounters in which he stared at Kilgore, he was fired.

{¶ 29} While we do not condone Moore's conduct, we hold as a matter of law that the evidence, when construed most favorably to Kilgore, was insufficient to support a finding that Moore's actions were severe or pervasive enough to create an objectively hostile work environment. Staring at someone, without more, is generally not sufficient to create a hostile work environment.[14]

{¶ 30} Kilgore also failed to show that Moore's actions toward her affected her work performance. There was no evidence that the quality and quantity of the work she performed ever suffered while Moore was employed by

---

11. See *Harris v. Forklift Sys., Inc.* (1993), 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295.

12. Id. at 21, 114 S.Ct. 367, 126 L.Ed.2d 295.

13. Id. at 23, 114 S.Ct. 367, 126 L.Ed.2d 295.

14. See *Mast v. IMCO Recycling of Ohio, Inc.* (C.A.6, 2003), 58 Fed.Appx. 116, 123; *Mendoza v. Borden, Inc.* (C.A.11, 1999), 195 F.3d 1238.

Ethicon. It was only after Moore was fired, when he committed a criminal offense by placing a death-threat phone call to Kilgore, that she became so consumed with anxiety that she eventually could no longer perform her job. It was the conduct after Moore was terminated from Ethicon that made Kilgore apprehensive. But the basis to hold an employer liable for a hostile work environment must be conduct committed by an actual employee. Ethicon could not have been responsible for a person who was no longer its employee.

{¶ 31} Additionally, Kilgore's claim failed the fourth prong of the hostile-work-environment test—whether the employer knew or should have known of the harassment and failed to take immediate and appropriate action. Here, in response to each incident in which an employee complained of Moore's conduct, Ethicon counseled Moore to engage in more professional behavior, suggested interpersonal-skills seminars, or formally warned him. Moore's conduct then was satisfactory for three years. When he started to stare at co-workers in the fall of 2002, he was quickly warned and then fired within a matter of two weeks when that behavior continued.

{¶ 32} Under these circumstances, no genuine issue of material fact remained. Ethicon took immediate and corrective action with regard to Moore's unwelcome behavior toward Kilgore. We thus overrule Kilgore's first assignment of error.

### VI. Safe Work Environment

{¶ 33} In her second assignment of error, Kilgore argues that Ethicon breached its common-law duty to provide a safe work environment and that the trial court erred in granting summary judgment in this respect. Kilgore maintains that this claim was not duplicative of her hostile-work-environment claim.

{¶ 34} The Ohio Supreme Court did create the common-law claim of failing to provide a safe work environment in *Kerans v. Porter Paint Co.*[15] The court stated that "an employer has a duty to provide its employees with a safe work environment" and "may be independently liable for failing to take corrective action against an employee who poses a threat of harm to fellow employees."[16] But that decision was based on a plaintiff bringing suit under workers' compensation statutes. The court held that the workers' compensation statutes did not provide the exclusive remedy for workplace sexual harassment, in part because workers' compensation only addressed economic damages.[17] The court believed that because workers' compensation did not adequately compensate for psycho-

---

15. *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428.

16. Id. at 493, 575 N.E.2d 428.

17. Id. at 489, 575 N.E.2d 428.

logical and emotional damages resulting from sexual harassment, an employee's remedy was not solely in the worker's compensation statutes.[18] The plaintiff in that case also did not bring a R.C. Chapter 4112 sexual-harassment claim, so the court did not address whether the statutory claim would have barred a common-law claim for a failure to provide a safe work environment based on the same sexual harassment.

{¶ 35} Although *Kerans* created the common-law tort of sexual harassment—that employers have a duty to provide a safe work environment—it did not clearly define the elements of this cause of action. Subsequently, Ohio courts interpreting and applying *Kerans* have adopted the elements of an R.C. Chapter 4112 sexual-harassment claim, as we have already set forth above.[19] But Ohio courts have added an element for the common-law tort: that "the employee has a past history of sexually harassing behavior about which the employer knew or should have known." [20]

{¶ 36} But the Ohio Supreme Court has also stated, in *Provens v. Stark Co. Bd. of Mental Retardation & Developmental Disabilities*,[21] that "public employees do not have a private cause of civil action against their employer to redress alleged violations by their employer of policies embodied in the Ohio Constitution when it is determined that there are other reasonably satisfactory remedies provided by statutory enactment and administrative process." [22]

{¶ 37} Thus the issue in this case is whether R.C. Chapter 4112 provided reasonably satisfactory remedies that would have barred Kilgore's common-law claim of sexual harassment as enunciated by the Ohio Supreme Court in *Kerans*.

{¶ 38} In the absence of *Kerans*, we would hold that R.C. Chapter 4112 provides the exclusive remedy for hostile-work-environment claims based on sexual harassment. Both claims seem to be reviewed under the same test. But courts analyzing *Kerans* have included an extra element—whether the employee's history of sexual harassment was known or should have been known by the employer. This extra element, along with the fact that the Ohio Supreme Court has never construed R.C. Chapter 4112 to be the exclusive remedy for hostile-

---

18. Id.

19. See *Barney v. Chi Chi's, Inc.* (1992), 84 Ohio App.3d 40, 616 N.E.2d 269.

20. *Kerans*, paragraph two of the syllabus.

21. *Provens v. Stark Co. Bd. of Mental Retardation & Developmental Disabilities* (1992), 64 Ohio St.3d 252, 594 N.E.2d 959.

22. Id. at syllabus.

work-environment claims based on sexual harassment, leads us to conclude that these are separate legal claims.

{¶ 39} In any event, Kilgore's common-law claim did not survive summary judgment for the same reasons that her claim did not survive R.C. Chapter 4112 scrutiny. Although Moore's conduct of staring was creepy and possibly intimidating, it was not enough to constitute a hostile work environment. Furthermore, in each incident in which an employee complained of Moore's conduct, Ethicon counseled Moore to engage in more professional behavior, suggested interpersonal-skills seminars, or formally warned him. Moore's conduct then was satisfactory for three years. When he started to stare at co-workers in the fall of 2002, he was quickly warned and then fired within two weeks after that behavior continued.

{¶ 40} Again, no genuine issue of material fact remained. Ethicon took immediate and corrective action with regard to Moore's unwelcome behavior toward Kilgore and did not violate its common-law duty to provide a safe work environment.

{¶ 41} Kilgore's second assignment of error is overruled. For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

HILDEBRANDT and DINKELACKER, JJ., concur.