[Cite as *Brandner v. Innovex, Inc.*, 2012-Ohio-462.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TINA M. BRANDNER, | : | APPEAL NO. C-110401 |
| | | TRIAL NO. A-1001132 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| INNOVEX, INC., | : | *O P I N I O N.* |
| SIRION THERAPEUTICS, INC., | : | |
| and | : | |
| VINCENT CAVALIERE, | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  February 10, 2012

*James M. Moore*, for Plaintiff-Appellant,

*Denlinger Rosenthal & Greenberg Co., L.P.A.*, *Mark E. Lutz*, *Semanoff Ormsby Greenberg & Torchia, L.L.C.*, *Michael J. Torchia* and *Alfredo Sergio*, for Defendant-Appellee Innovex, Inc.,

*Dinsmore & Shohl, L.L.P.*, *Michael W. Hawkins* and *Trevor E. Gillette*, for Defendant-Appellee Sirion Therapeutics, Inc.,

*Mann & Mann, L.L.C.*, *David S. Mann* and *Michael T. Mann*, for Defendant-Appellee Vincent Cavaliere.

Please note:  This case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Plaintiff-appellant Tina M. Brandner appeals the judgment of the Hamilton County Court of Common Pleas granting summary judgment to defendants-appellees Innovex, Inc., (now known as Quintiles Commercial U.S., Inc.), Sirion Therapeutics, Inc., and Vincent Cavaliere (collectively "Defendants"), on Brandner's claims for sexual harassment and retaliation. Because we determine that no genuine issues of material fact exist with regard to Brandner's claims and that the Defendants are entitled to judgment as a matter of law, we affirm.

### Factual Background

{¶2} Brandner had begun working for Innovex, Inc., ("Innovex"), in September 2008, as a pharmaceutical sales representative for Durezol, a product of Sirion Therapeutics, Inc., ("Sirion"), and her sales territory had included cities within Ohio, Kentucky, and Indiana. Within the first few months of her employment, Brandner had ranked first among sales representatives for prescription volume, a ranking she had maintained largely throughout her employment, and she had received a bonus for her performance in the last quarter of 2008.

{¶3} Brandner had reported to Cavaliere, a district manager for Innovex. As a sales representative, Brandner had had infrequent in-person contact with Cavaliere, except for district meetings and on select "field visits" with doctors. Nevertheless, Brandner had had multiple interactions with Cavaliere from the start of her employment until late March or early April 2009, which she alleged had been harassing. Brandner testified in her deposition that Cavaliere had touched her on four or five different occasions while the two had driven together on field visits. Brandner described the touching as a "mini massage" on her shoulder or the middle

part of her thigh. When Brandner had told Cavaliere not to touch her, he had stopped.

{¶4} Brandner also testified that Cavaliere had made allegedly harassing comments. While on a field visit, Cavaliere had remarked to Brandner that a woman's legs looked good in a skirt, and that Brandner's legs would probably look just as nice. Cavaliere also had told Brandner on at least one occasion that she dressed too conservatively and that she might get more business if she dressed less conservatively. Cavaliere had told Brandner that her looks would not hurt her when going on sales calls. On two separate occasions, Cavaliere had commented on another sales representative's sexual orientation; additionally, he had made a remark about another sales representative having a double mastectomy, which he had said would negatively affect the representative's sales. Brandner testified that Cavaliere had remarked once that he would like to go to the lake home that Brandner had purchased with her boyfriend. Cavaliere had stated that he could go there some time with his wife, or when his wife was away, he could go there by himself if Brandner were going to be there.

{¶5} In February 2009, Christine Marcello, who had worked in human resources for Innovex, had interviewed Brandner and other sales representatives after a complaint had been made against Cavaliere by another sales representative. Marcello had concluded, at the end of her investigation, that Cavaliere had an unprofessional management style at times, although he had not "attacked" anyone individually. As a result, Cavaliere had been disciplined and had been required to take three management-training sessions.

{¶6} Brandner had contacted Marcello on her own initiative in March 2009 after Cavaliere had given incorrect information to doctors regarding a company program and had cursed in front of one of the doctors, and Brandner had seen Cavaliere drive past her home after work hours. Brandner testified that she had become scared of Cavaliere after she had seen him drive past her house, and that she had felt "very uncomfortable" with him. Brandner had made the same complaints to Travis Pitre, a national manager for Innovex and Cavaliere's supervisor, in late March or early April. Brandner testified that she also had told Marcello about the incidents where Cavaliere had touched her in the car, where he had commented on her legs, and where he had commented on the other sales representative's mastectomy and sexual orientation. Marcello's contemporaneous notes had not mentioned these incidents, and Brandner testified that she could not recall whether she had told Marcello about these incidents in their conversations in February or March.

{¶7} After early April, Brandner's contact with Cavaliere had been limited. Brandner also testified that her job had not been impaired by the limited interaction, and Brandner had not made any more complaints to Innovex employees regarding Cavaliere. Cavaliere had been issued a "final" warning letter from Innovex regarding his management style and had been instructed to take more training courses. In July 2009, Cavaliere had accompanied Brandner on a field visit, but Cavaliere had driven separately from Brandner.

{¶8} Meanwhile, in April 2009, Innovex had changed its bonus structure. Bonuses were no longer based upon prescription volume, but instead were based upon the number of physicians contacted within the entire territory for all Sirion

4

products, and the frequency with which those physicians were contacted. Michael Radice, an Innovex top manager, testified that Brandner had not been covering enough of her territory, specifically Indianapolis.

{¶9} According to Marcello's testimony, in May 2009, and unbeknownst to Brandner at the time, Cavaliere had recommended Brandner's termination because she had not been calling on physicians as expected. Brandner's employment, however, continued, and as of June 8, 2009, Brandner had not reached the targeted threshold for contacting physicians. As a result, Brandner had been placed on a Performance Management Plan ("PMP") beginning in July, which meant that Brandner would not have been eligible for bonuses. Brandner was one of several sales representatives that had been placed on a PMP at that time.

{¶10} Brandner testified that she had been doing an excellent job and that computer problems that Cavaliere had failed to address had contributed to her lower numbers. She also testified that Cavaliere had given her inconsistent guidance because he had told her to concentrate on her accounts in Cincinnati because of the high prescription volume obtained from those accounts, but then he had criticized her in an e-mail for not focusing more on other parts of her territory. Brandner also testified that Cavaliere had told her that he did not agree with placing her on the PMP.

{¶11} Brandner's PMP had continued into August 2009, at which time Cavaliere's employer had transitioned from Innovex to Sirion. On September 1, 2009, Brandner's employment also had transitioned to Sirion. A week later, during a conference call on September 8, 2009, Brandner had been told by Cavaliere and Sirion human-resources employee Lillie Espinosa that her employment had been

terminated. Espinosa and Cavaliere maintained that Brandner's employment had been terminated because she had violated a company policy and a Federal Drug Administration regulation requiring a sales representative leaving a pharmaceutical sample with a physician to actually witness the physician sign for the sample. An investigation that had been initiated by Cavaliere had uncovered that Brandner had submitted a form with a physician's signature, which did not match that physician's previous signatures. Brandner essentially conceded that the physician's signature was not authentic, but Brandner testified that Cavaliere had told her she did not actually have to witness a signature if the physician was busy. In her affidavit, Espinosa stated that any employee who submitted an unauthentic physician's signature would be terminated from Sirion.

{¶12} Brandner filed suit in the Hamilton County Court of Common Pleas against the Defendants, alleging claims for hostile work environment, retaliation, gender discrimination in pay, breach of the Ohio Whistleblower Act, breach of public policy, negligent retention and supervision, and intentional infliction of emotional distress. The Defendants separately filed motions for summary judgment on all of Brandner's claims. Brandner also filed a motion for partial summary judgment. The trial court granted Defendants' motions and denied Brandner's motion. Brandner now appeals the trial court's decision with regard to her hostile-work-environment and retaliation claims only.

### Summary-Judgment Standard

{¶13} When reviewing a summary-judgment ruling, we apply a de novo standard of review. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000). Under Civ.R. 56(C), summary judgment is appropriate when no genuine

issues of material fact remain, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

### First Assignment of Error

{¶14} Brandner contends in her first assignment of error that the trial court erred in granting Defendants' motions for summary judgment on her claim for hostile work environment. R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of the sex of any person, "to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Case law interpreting Title VII of the Civil Rights Act of 1964 also applies to cases brought under R.C. Chapter 4112. *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 175, 729 N.E.2d 726 (2000). To prove discrimination on the basis of sex under R.C. 4112.02(A), a plaintiff can proceed under either of two of theories: (1) quid pro quo, meaning that the harassment is directly linked to the gain or loss of a tangible economic benefit; or (2) hostile work environment, meaning that the harassment has the purpose or effect of creating an abusive working environment. *Id.* at 175-176.

{¶15} Because Brandner has alleged a hostile-work-environment claim, she must show the following:

> (1) that the harassment was unwelcome, (2) that the
>
> harassment was based on sex, (3) that the harassing

7

conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Id.* at 176-177, quoting R.C. 4112.02(A).

{¶16} As to the third prong, severe or pervasive conduct, the harassing conduct must be more than merely offensive; the conduct must be severe and pervasive enough that the victim subjectively regards the work environment as abusive, and that a reasonable person would also find the environment abusive. *Kilgore v. Ethicon Endo-Surgery, Inc.*, 172 Ohio App.3d 387, 2007-Ohio-2952, 875 N.E.2d 113, ¶ 24 (1st Dist.), citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). When determining whether the conduct is actionable, the court must examine the totality of the circumstances, including (1) the frequency of the conduct, (2) the severity of the conduct, (3) the threatening or humiliating nature of the conduct, and (4) whether the conduct unreasonably interferes with the plaintiff's work performance. *Kilgore* at ¶ 25-26, citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The plaintiff must show that the conduct made it more difficult to perform the job. *Bucher v. Sibcy Cline, Inc.*, 137 Ohio App.3d 230, 245, 738 N.E.2d 435 (1st Dist.2000).

8

{¶17} Assuming that Cavaliere's actions toward Brandner were based upon Brandner's sex, although not all of Cavaliere's actions were evidently made with a gender-based animus, we cannot, as a matter of law, determine that Cavaliere's boorish actions amount to severe or pervasive conduct that altered the terms and conditions of Brandner's employment. Cavaliere's unwelcome conduct toward Brandner cannot be characterized as frequent. Brandner's position as a sales representative had required little in-person contact with Cavaliere, and thus the incidents of which Brandner complains had occurred over a period of several months from the beginning of Brandner's employment in September 2008 to, at the latest, early April 2009.

{¶18} The most severe conduct by Cavaliere had occurred when Cavaliere had touched Brandner's leg or shoulder in the car multiple times, continuing until Brandner had asked Cavaliere to stop. The other comments Cavaliere had made, for example, the comment about Brandner's legs looking nice, the comment about Cavaliere going to Brandner's lakehouse if she were going to be there, and dressing less conservatively, although possibly harassing conduct, did not reach the same level of severity as the touching.

{¶19} Moreover, Cavaliere's conduct did not unreasonably interfere with Brandner's work performance such that Brandner's job became more difficult to perform. Although Brandner testified that she had become scared of Cavaliere after she had seen him drive past her house, and that she had felt "very uncomfortable" with him, Brandner also testified that she had had very limited direct contact with Cavaliere after these incidents, and specifically testified that her job had not been

9

impaired by the limited interaction. Brandner testified that she had performed well throughout her employment, even when she had been placed on the PMP.

{¶20} Additionally, with regard to Sirion, the alleged acts of sexual harassment all occurred prior to Brandner's employment at Sirion. As Sirion notes, in order to succeed on a hostile-work-environment claim, a plaintiff must be an employee at the time of the harassment. *Hoyt v. Nationwide Mut. Ins. Co.*, 10th Dist. No. 04AP-941, 2005-Ohio-6367, ¶ 71, citing *Kinnison v. Advance Stores Co., Inc.*, 5th Dist. No. 02CA73, 2003-Ohio-3387, ¶ 16-17. The undisputed evidence shows that the allegedly harassing conduct occurred prior to Brandner's employment with Sirion.

{¶21} Therefore, after reviewing the evidence in the light most favorable to Brandner, we determine that she failed to establish a hostile-work-environment claim against Defendants. Accordingly, summary judgment in favor of the Defendants was appropriate on Brandner's hostile-work-environment claim, and we overrule Brandner's first assignment of error.

### Second Assignment of Error

{¶22} Brandner contends, in her second assignment of error, that the trial court erred in granting Defendants' motions for summary judgment on her retaliation claim. R.C. 4112.02(I) makes it an unlawful employment practice "for any person to discriminate against any other person because that person has opposed any unlawful discriminatory practice or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

{¶23} In order for Brandner to establish a prima facie case of retaliation under R.C. 4112.02(I), she must prove that (1) she engaged in a protected activity, (2) her employer knew of her participation in the protected activity, (3) she suffered an adverse employment action, and (4) there was a causal relationship between the protected activity and the adverse action. *DuVall v. Time Warner Entertainment Co.*, 1st Dist. No. C-980515 (June 25, 1999). Once a prima facie case has been established, the burden then shifts then to the employer to demonstrate a legitimate, non-discriminatory reason for engaging in the adverse action. *Knepper v. Ohio State Univ.*, 10th Dist. No. 10AP-1155, 2011-Ohio-6054, ¶ 25. The burden then shifts back to the plaintiff to prove that the employer's reason is a mere pretext for unlawful retaliation. *Id.* The employer's reason is pretextual if the reason is shown to be false and the discrimination is the actual reason. *Id.*

{¶24} When determining whether a causal relationship exists between the protected activity and the adverse action, direct evidence of a causal connection or knowledge, together with temporal proximity, can create an inference of causation. *Nguyen v. Cleveland*, 229 F.3d 559, 566 (6th Cir.2000). But, "[w]here some time elapses between the protected activity and the subsequent adverse employment action, the employee must produce other evidence of retaliatory conduct, namely, evidence of additional discrimination, to establish causation." *Meyers v. Goodrich Corp.*, 8th Dist. No. 95996, 2011-Ohio-3261, ¶ 29. Evidence that the employer treated the plaintiff differently than similarly-situated employees is also relevant in this analysis. *Id.* Moreover, "[t]he plaintiff cannot prevail if it appears from the evidence that the employer would have made the same decision regardless of the

11

plaintiff's participation in the protected activity." *Neal v. Hamilton Cty.*, 87 Ohio App.3d 670, 678, 622 N.E.2d 1130 (1st Dist.1993).

{¶25} With respect to defendants Cavaliere and Innovex, assuming that Brandner's placement on the PMP constituted an adverse employment action, Brandner cannot establish a causal connection between her complaints to Innovex employees and her placement on the PMP. Because months had elapsed between the complaints and the PMP, Brandner must point to some other evidence of discrimination. Brandner argues that Cavaliere had had very limited direct communication with Brandner after the complaints, that Cavaliere had refused to acknowledge her computer problems, which affected her sales numbers, that he had recommended Brandner's termination, and that he had given her inconsistent directives. The evidence shows, however, that Cavaliere and Innovex would have placed Brandner on the PMP regardless of her complaints, and that Brandner had not been treated differently than other PMP-imposed sales representatives when she too had been placed on the PMP. Brandner, as well as other employees, had been placed on PMP as a result of failing to meet uniform, targeted goals from Sirion, and an Innovex top manager testified that Brandner had not been covering enough of her territory, specifically Indianapolis.

{¶26} With regard to Brandner's termination from Sirion, even if we assume that Brandner established a prima facie case of discrimination, Sirion and Cavaliere provided a legitimate, non-discriminatory reason for Brandner's termination, which Brandner failed to establish was pretextual. Sirion and Cavaliere assert that Brandner had been terminated as direct a result of her failure to comply with the company's specific policy and a well-known FDA regulation, which undeniably

required a pharmaceutical sales representative to witness a physician's signature when leaving a sample with that physician. Brandner conceded during her deposition that she had not complied with the policy and regulation, but she also contends that Cavaliere had told her she did not actually have to witness a physician's signature if a physician were busy. Even when construing the evidence in the light most favorable to Brandner, Brandner cannot refute Sirion employee Espinosa's averment that any employee who submitted an unauthentic signature would face termination from Sirion. Therefore, Brandner has failed to establish that the reason given for termination from Sirion was a pretext for discrimination.

{¶27} After reviewing the evidence in the light most favorable to Brandner, we determine that Brandner failed to demonstrate that Defendants would not have placed her on the PMP and would not have terminated her but for her participation in protected activity. Therefore, the trial court properly granted summary judgment on Brandner's retaliation claim, and we overrule Brandner's second assignment of error.

{¶28} The judgment of the trial court is affirmed.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **DINKELACKER, J.,** concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.