[Cite as *Hay v. Summit Funding, Inc.*, 2017-Ohio-8261.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| DIANNA HAY, | : | Case No. 16CA3577 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| vs. | : | <u>ENTRY</u> |
| | : | |
| SUMMIT FUNDING, INC., et al. | : | |
| | : | |
| Defendants-Appellants. | : | **Released: 10/18/17** |

<u>APPEARANCES</u>:

Steven M. Loewengart and Curtis G. Moore, Fisher & Phillips, LLP, Columbus, Ohio, for Appellants.

Nicholas Kolitsos, Jones Law Group, LLC, Columbus, Ohio, for Appellee.

McFarland, J.

{¶1} Summit Funding, Inc., Eddie Hughes, and John Beasley (collectively, "Appellants") appeal the final judgment of the Ross County Court of Common Pleas entered November 9, 2016. Dianna Hay ("Appellee"), a former employee of Summit Funding, Inc., filed a complaint alleging Appellants engaged in conduct constituting sexual harassment. Appellants filed a Motion to Compel Arbitration, arguing Appellee's claims were subject to arbitration by virtue of an agreement Appellee executed at the time she was hired. In the appealed-from entry, the trial court overruled Appellants' motion. Appellants' sole assignment of error is that

the trial court erred in holding that Appellee's claim of sexual harassment did not

fall within the scope of the arbitration agreement.  Based upon our de novo review

in this matter, we find Appellants' argument has merit.  As such, we reverse the

judgment of the trial court.

## FACTS

{¶2} On July 13, 2016, Appellee filed a complaint in the Ross County Court

of Common Pleas against Appellants Summit Funding, Inc., Eddie Hughes, and

John Beasley, alleging sexual harassment, hostile work environment, termination

in violation of public policy, retaliation, intentional and negligent infliction of

emotion distress, respondeat superior, defamation, and negligent hiring, training,

retention and supervision.  The following is a summary of the allegations of her

complaint:

> 1) Upon Appellee's employment in July 2015 as a loan officer for Summit Funding, Inc., a California corporation conducting business in Chillicothe, Ohio, Appellee was required to work alone in a branch office with Appellant Hughes.  Appellee and Hughes were employed under the supervision of Appellant Beasley. Additionally, Hughes supervised Appellee's time sheets and directed some job duties.
>
> 2) Within the first week of employment, Hughes exhibited unwanted and offensive sexual conduct towards Appellee which included sexually charged comments both verbally and via text and picture messaging; sexual advances; invasion of personal space; and Hughes taking a picture of Appellee's "backside," which he later published to Beasley.
>
> 3) Appellee rejected the sexual advances and requested that Hughes desist, but the harassment continued and heightened in severity and

frequency. On one occasion, Hughes became physically violent. Appellee alleged she became concerned for her physical safety as well.

4) In August 2015, Beasley advised Appellee not to contact human resources regarding her complaints about Hughes' behavior. In August 2015, Hughes confronted Appellee about her time sheets and other work matters, threatening not to pay her for overtime.

5) On or about August 31, 2015, per Summit Funding's established protocol, Appellee reported the harassment to Summit Funding's human resource director. On or about September 1, 2015, Appellee was directed not to report to work until an investigation into her complaints was completed.

6) On September 16, 2015, Appellee received two letters. In the first letter, Summit Funding advised that its investigation confirmed that Hughes did act inappropriately. In the second letter, Summit Funding advised Appellee that her employment was terminated.

7) Since Appellee's termination, Hughes made and has continued to make defamatory remarks falsely stating Appellee was terminated by Summit Funding due to inability to perform her job.

{¶3} Appellee's complaint demanded judgment against Appellants, jointly and severally, and requested compensatory, special, and punitive damages. Appellee further requested a declaratory finding that Hughes' statements were untrue and defamatory, as well as a retraction from Hughes.

{¶4} On September 16, 2016, Appellants filed a motion to compel arbitration. On September 30, 2016, Appellee filed a memorandum contra the motion to compel arbitration. On November 9, 2016, the trial court filed its

decision and judgment entry denying the motion to compel arbitration.  This timely appeal followed.

ASSIGNMENT OF ERROR

"I. THE TRIAL COURT ERRED IN HOLDING THAT THE PLAINTIFF-APPELLEE'S CLAIMS DO NOT FALL WITHIN THE SCOPE OF THE PARTIES' ARBITRATION AGREEMENT."

A. STANDARD OF REVIEW

{¶5} The question of whether a party has agreed to submit an issue to arbitration is reviewed under a de novo standard. *Arnold v. Burger King,* 48 N.E.3d 69, 2015-Ohio-4485, at ¶ 11; *Hedeen v. Autos Direct Online, Inc.,* 8th Dist. Cuyahoga No. 100582, 2014-Ohio-4200, 19 N.E.3d 957, ¶ 9, citing *McCaskey v. Sanford–Brown College,* 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7; and *Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12. *See also Cales v. Armstrong World Industries, Inc.,* 4th Dist. Scioto No. 02CA2851, 2003-Ohio-1776, ¶ 16; *Intl. Union of Operating Engineers v. Flair Builders, Inc.*, 406 U.S. 487, 491, 92 S.Ct. 1710 (1972); *John Wiley & Sons, Inc. v. Livingston* , 376 U.S. 543, 547, 84 S.Ct. 909 (1964).

{¶6} Under a de novo standard of review, we give no deference to a trial court's decision. *Hedeen* at ¶ 9, citing *Brownlee v. Cleveland Clinic Found.,* 8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212, ¶ 9; *Akron v. Frazier,* 142 Ohio App.3d 718, 721, 756 N.E.2d 1258 (9th Dist.2001). *See Harter v. Chillicothe*

*Long–Term Care, Inc.,* 4th Dist. Ross No. 11CA3277, 2012–Ohio–2464, ¶ 12 (de novo review in the context of summary judgment motion practice.)

## B.   LEGAL ANALYSIS

**{¶7}** When parties to a contract have agreed in writing to arbitration of disputes, the trial court must, upon application of a party and being satisfied that the issue is referable to arbitration, stay its proceedings pending the arbitration. R.C. 2711.02(B). However, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit * * *. *Ritchie's Food Distributor, Inc., v. Refrigerator Const. Services, Inc.,* 4th Dist. Pike No. 03CA713, 2004-Ohio-2261, ¶ 9; *Council of Smaller Enterprises v. Gates, McDonald Co.,* 80 Ohio St.3d 661, 666–67, 1998–Ohio–172; *Divine Constr. Co. v. Ohio American Water Co.*, 75 Ohio App.3d 311, 316, 599 N.E.2d 388 (10th Dist.1991).  If the party challenging arbitration has not agreed to arbitration by contract, there is a presumption against arbitration. *Bell v. Everen Securities, Inc.* 9th Dist. Summit No. 19581, 2000 WL 141001, *2, (Feb. 2, 2000), citing *Council of Smaller Enterprises* at 667, 687 N.E.2d 1352.

**{¶8}** Appellants' sole assignment of error challenges the trial court's finding that Appellee's claims predicated on sexual harassment were not within the scope of the arbitration agreement Appellee executed with Appellant Summit. Until the existence of an agreement to arbitrate is established, "[o]ur inquiry is ' "strictly

confined" * * * to whether the parties agreed to submit disputes * * * to arbitration.' " (First alteration original.) *Ritchie's, supra,* at ¶ 10, quoting *Council of Smaller Enterprises* at 668, 687 N.E.2d 1352.  General contract principals apply to the determination of whether the parties agreed to an arbitration clause. *Id.* at 668, 687 N.E.2d 1352; *Divine Constr. Co.* at 316; *Bell, supra.*

**{¶9}** After the existence of an agreement to arbitrate is established, there is a strong presumption in favor of arbitration, and any ambiguities or doubts regarding the scope of the arbitration clause are resolved in favor of arbitration. *Sasaki v. McKinnon*, 124 Ohio App.3d 613, 616, 707 N.E.2d 9 (8th Dist.1997); *Gaffney v. Powell*, 107 Ohio App.3d 315, 320, 668 N.E.2d 951 (1st Dist.1995).  Generally speaking, Ohio's public policy encourages arbitration as a method to settle disputes. *Arnold, supra,* at 23; *Schaefer v. Allstate Ins. Co.,* 63 Ohio St.3d 708, 711–712, 590 N.E.2d 1242 (1992); and the Ohio Arbitration Act, R.C. Chapter 2711.[1]  As a result of Ohio's pro-arbitration stance, courts indulge a strong presumption in favor of arbitration when the disputed issue falls within the scope of the arbitration agreement. *Arnold, supra,* at ¶ 24; *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998); *Taylor Bldg.,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 27.

---

[1] A trial court, "shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement." R.C. 2711.02.

{¶10} In their brief, Appellants emphasize the long-standing federal and state law presumption favoring arbitration. Here, the trial court's decision also recognizes the strong presumption in favor of arbitration. However, the trial court points out the presumption is not unlimited. "Though guided by a strong presumption, Ohio also recognizes that principles of equity and fairness require that greater scrutiny be given to arbitration provisions that do not involve parties of equal sophistication and bargaining power." *Arnold, supra,* at 25.

A. Appellants argue Appellee's sexual harassment claims are within the agreement's scope because sexual harassment is a form of sex discrimination.

{¶11} When deciding whether parties agreed to arbitrate a certain matter, courts generally apply ordinary state-law principles that govern the formation of contracts. *Cales, supra*, citing, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920 (1995); *see also Perry v. Thomas* , 482 U.S. 483, 492-493, 107 S.Ct. 2520 (1987), at fn. 9. General contract law holds that a court must interpret a contract so as to carry out the intent of the parties. *Ritchie's, supra*, at ¶ 11; *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 678 N.E.2d 519 (1997); *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635,

597 N.E.2d 499 (1992); *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus.  A court must construe a contract against its drafter. *Cent. Realty Co. v. Clutter*, 62 Ohio St.2d 411, 406 N.E.2d 515 (1980).

{¶12} If the contract's terms are unambiguous, a court may not interpret the contract in a manner inconsistent with those terms. *Ritchie's supra,* at ¶ 12; *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). Contractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably susceptible to more than one interpretation. *U.S. Fid. & Guar. v. Aultman St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 55, 716 N.E.2d 1201 (2nd Dist.1999).  If a contract is clear and unambiguous, then its interpretation is a matter of law that we review de novo. *Nationwide Mut. Fire. Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 6841(1995). *Ritchie's, supra,* at ¶ 13.  We begin by setting forth the language contained in the arbitration clause at issue:

"A. Claims Covered by the Agreement

The only claims that are arbitrable are those that are justiciable under applicable federal state or local law.  Arbitrable claims include, but are not limited to: * * * claims for discrimination (on the basis of, but not limited to, race, sex, * * * claims for violation of any federal, state, or other governmental law, statute regulation or ordinance (except as provided below)."

{¶13} As is evident, the language of the parties' arbitration agreement explicitly provides for claims for discrimination on the basis of sex.  However, in its judgment, the trial court noted that the arbitration language at issue did not specify "sexual harassment" but only "sexual discrimination."  In essence, this is a question of whether, due to the omission of the term "sexual harassment," Appellee intended to agree to arbitrate a sexual harassment claim.

{¶14} Appellants assert it is well-settled that sexual harassment is a form of sexual discrimination under Title VII of the Civil Rights Act of 1964 and Ohio Revised Code 4112.  Therefore, the trial court erred in holding there was a distinction between sexual harassment and sexual discrimination.  By contrast, Appellee argues that while it is true that a person can be both sexually harassed and discriminated against in the same instance, one can also be sexually harassed without being discriminated against.  As such, the harassment claim stands on its own.

{¶15} We are compelled to agree with Appellants.  The Equal Employment Opportunity Commission (EEOC) has provided the following guidance on the relevant terms herein:

> "Harassment is a form of employment discrimination that violates
> Title VII of the Civil Rights Act of 1964, the Age Discrimination in
> Employment Act of 1967, (ADEA), and the Americans with
> Disabilities Act of 1990, (ADA).* * *

Harassment is unwelcome conduct that is based on race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information. Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. * * *

To be unlawful, the conduct must create a work environment that would be intimidating, hostile, or offensive to reasonable people. * * *

Offensive conduct may include, but is not limited to, offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance.

Harassment can occur in a variety of circumstances, including, but not limited to, the following:

The harasser can be the victim's supervisor, a supervisor in another area, an agent of the employer, a co-worker, or a non-employee. The victim does not have to be the person harassed, but can be anyone affected by the offensive conduct.  Unlawful harassment may occur without economic injury to, or discharge of, the victim."

{¶16} Furthermore, the EEOC's definition of sexual harassment is as

follows:

"It is unlawful to harass a person (an applicant or employee) because of that person's sex. Harassment can include "sexual harassment" or unwelcome sexual advances, requests for sexual favors, and other verbal or physical harassment of a sexual nature. * * *

Harassment does not have to be of a sexual nature, however, and can include offensive remarks about a person's sex. For example, it is illegal to harass a woman by making offensive comments about women in general."

{¶17} The parties have also directed us to several pertinent cases. In *Meritor Savings v. Vinson, FSB,* 477 U.S. 57, 64, 106 S.Ct. 2399 (1986), the United States Supreme Court observed that Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The *Meritor* opinion highlighted the EEOC Guidelines issued in 1980 and specified that "sexual harassment," as there defined, is a form of sex discrimination prohibited by Title VII. *Id.* at 65.

{¶18} In *Hampel v. Food Ingredient Specialties, Inc.,* the Supreme Court of Ohio recited *Meritor's* language that held: "[A] plaintiff may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination "because of * * * sex" by proving either of two types of sexual harassment: (1) "quid pro quo" harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) "hostile environment" harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment. Various Ohio appellate courts have cited the language of the *Meritor* and *Hampel* decisions.

{¶19} In *Kilgore v. Ethicon Endo-Surgery, Inc.,*172 Ohio App.3d 387, 2007-Ohio-2902, 875 N.E.2d 113 (1st Dist.), at ¶ 23, the appellate court recited the language of the Civil Rights Act and R.C. 4112.02(A) regarding discriminatory practices. Specifically, the court stated: "R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of the sex of any person, to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment. This includes subjecting the employee to sexual harassment. *This includes subjecting the employee to sexual harassment.*" (Emphasis added.) *Id.*

{¶20} In *Egli v. Congress Lake Club,* 5th Dist. Stark No. 2009CA00216, 2010-Ohio-2444, at ¶ 30, the appellate court observed that R.C. 4112.02(A) prohibits sex discrimination in all matters related to employment. *Birch v. Cuyahoga Cty. Probate Court,* 173 Ohio App.3d 696, 880 N.E.2d 132, 2007-Ohio-6189, at ¶ 20. *Egli* further stated: "Ohio courts apply federal case law interpreting Title VII of the Civil Rights Act of 1964 to claims arising under R.C. Chapter 4112 to the extent that the terms of the statutes are consistent." *Id.*, citing *Genaro v. Cent. Transport, Inc.*, 84 Ohio St.3d 293, 298, 703 N.E.2d 782 (1999), citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981). Our own decision in *Harter v. Chillicothe Long-Term Care, supra,* at ¶16, also recognized the Ohio courts'

practice of applying federal case law interpreting Title VII of the Civil Rights Act

to claims arising under R.C. 4112. *Id.* at 26.

{¶21} Then, in *Persichillo v. Motor Carrier,* 156 Ohio App.3d 383, 806

N.E.2d 181 (6th Dist.2004), at ¶ 12, the appellate court recited the R.C. 4112.02(A)

language defining discriminatory practices, previously set forth above. The

*Persichillo* court further cited the language of *Hampel, supra,* at ¶ 13:

> "The Ohio Supreme Court has held that "[a] plaintiff may establish a
> violation of R.C. 4112.02(A)'s prohibition of discrimination 'because
> of * * * sex' by proving either of two types of sexual harassment: (1)
> 'quid pro quo' harassment, i.e., harassment that is directly linked to
> the grant or denial of a tangible economic benefit, or (2) 'hostile
> environment' harassment, i.e., harassment that, while not affecting
> economic benefits, has the purpose or effect of creating a hostile or
> abusive working environment." *Hampel v. Food Ingredients
> Specialties, Inc.* (2000), 89 Ohio St.3d 169, 729 N.E.2d 726,
> paragraph one of the syllabus."[2]

{¶22} Similarly, in *McPherson v. Goodyear Tire & Rubber, Inc.,* 9th Dist.

Summit No. 21499, 2003-Ohio-7190, at ¶ 24, the appellate court noted that both

state and federal statutes prohibit discrimination based on gender. *See* R.C.

---

[2] For this principle, *see also Ellis v. Jungle Jim's Market, Inc.,* 44 N.E.3d 1034, 2015-Ohio-4226 (12th Dist.), at ¶ 20: "Federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Bowers v. Hamilton City School Dist. Bd. of Educ.,* 12th Dist. Butler No. CA2001–07–160, 2002 WL 449499, *3 (Mar. 25, 2002), citing *Hampel* at 175, 729 N.E.2d 726. *Gorawjewski v. Douglas,* 6th Dist. Lucas No. L-13-1050, 2014-Ohio-1296, at ¶ 47. Furthermore, as stated in *Peterson v. Buckeye Steel Casings,* 133 Ohio App.3d 715, 723, 729 N.E.2d 813 (10th Dist. 2003), pursuant to R.C. 4112.02(A) and Title VII of the Civil Rights Act of 1964, Section 701 et seq., as amended, 42 U.S.C.A.2000(e) et seq. ("Title VII"), sexual harassment that constitutes discrimination on the basis of sex is generally categorized as either a quid pro quo claim or a hostile work environment claim. Our decision in *Harter, supra*, at ¶ 16, also recited the language explaining that sex discrimination can be proven by demonstrating the two types of sexual harassment: "quid pro quo," or "hostile work environment."

4112.02; Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code. The appellate court stated: "Sexual harassment which amounts to sex discrimination has been generally categorized as either quid pro quo harassment or a hostile work environment." *Id; See Sheffield Village of Ohio v. Ohio Civ. Rts. Comm.* (June 7, 2000), 9th Dist. Lorain No. 99CA007283.

{¶23} Federal and Ohio case law make it clear that sexual harassment is a form of sexual discrimination. The definitions provided by the EEOC demonstrate it is true that one may be harassed without being harassed in a sexual manner, i.e. racial or other discrimination. The case law also demonstrates that one may be sexually harassed without being able to prove discrimination, i.e. the grant or denial of tangible economic benefit or "hostile work environment." However we do not agree with Appellee's counter-argument that because "sexual harassment" was not explicitly set forth in the parties' arbitration agreement, the sexual harassment claim was not intended to be within the scope of the agreement. While we have found no case law in which this precise question has been answered, we have reviewed cases in which the appellate courts closely examined contract language in order to resolve interpretation issues.

{¶24} In *Ritchie's*, the trial court found an agreement between parties to be ambiguous on its face with regard to whether the parties intended to agree to a subsection within Article 9 of the agreement, entitled "ARCHITECT'S

ADMINISTRATION OF THE CONTRACT." This court's decision in *Ritchie's*

set forth the generally applicable principles of contract interpretation and

ultimately agreed that the contract was ambiguous as a matter of law. Specifically,

because the contract listed "N/A" under the architect designation, but the parties

did not strike the numerous contract provisions regarding the architect, we found

the contract to be "reasonably susceptible to more than one interpretation." *Id.* at

¶ 14.

{¶25} In *Buckholtz v. West Chester Dental Group,* 12th Dist. Butler No.

CA2007-11-292, 2008-Ohio-5299, the appellate court looked to other language in

an arbitration agreement, along with the American Arbitration Association Rules,

in affirming the trial court's conclusion that there was no harm or prejudice to

Appellant by a five-month delay in the issuance of an arbitration decision. The

arbitration agreement entered into by the parties did not explicitly state when the

arbitrator's decision was due. However, the agreement stated that the "arbitration

shall be conducted under the commercial arbitration rules of the American

Arbitration Association * * *." The language of section R-41 of the American

Arbitration Association's (AAA) Commercial Arbitration Rules stated that an

"award shall be made promptly by the arbitrator * * * no later than 30 days from

the date of closing the hearing * * *." The appellate court also noted there was no

language found in R-41, or any other AAA rule that unequivocally stated that an

arbitrator would lose his jurisdiction by issuing a decision more than 30 days after closing the hearing.

{¶26} And, in *Kinder Morgan Cochan L.L. C. v. Simonson*, 2016-Ohio-4647, 66 N.E.3d 1176 (5th Dist.), the appellate court held that the trial court did not err in finding that the term "petroleum," as used in R.C. § 1723.01, a statute authorizing pipeline developer to enter property for purposes of conducting a survey, included the natural gas liquids "ethane" and "propane."  In its reasoning, the appellate court stated: "In construing statutory terms, we are guided by the legislature's use of the same terms defined elsewhere in the Revised Code. *Id*. at 21; *See Cablevision of the Midwest, Inc. v. Gross,* 70 Ohio St.3d 541, 639 N.E.2d 1154 (1994).

{¶27} Here, we do not find the language of the arbitration agreement to be ambiguous.  While we have not found use of the terms "sexual discrimination" and "sexual harassment" used interchangeably within the Revised Code, we are mindful of the case law's repeated instruction that "Ohio courts apply federal case law interpreting Title VII of the Civil Rights Act of 1964 to claims arising under R.C. Chapter 4112 * * *."  And, we note the parties' arbitration agreement recitation that "The only claims that are arbitrable are those that are justiciable under applicable federal state or local law."  Sexual harassment is indeed one of the claims justiciable under applicable federal and state law.  Therefore, it is not

unreasonable to conclude that Appellant's sexual harassment claim is properly encompassed within sexual discrimination language of the arbitration agreement.

{¶28} While the term "sexual harassment" was not employed in the arbitration agreement Appellee executed, based on the EEOC's definitions provided, along with Ohio's practice of applying federal law case law interpreting Title VII of the Civil Rights Act to R.C. 4112, it would not be reasonable to interpret the parties' agreement to arbitrate claims for sex discrimination as excluding claims for sexual harassment. We find provision for Appellee's sexual harassment claim well-within the "umbrella" of the sexual discrimination language of the arbitration agreement.

{¶29} In the trial court and on appeal, Appellee also argued that the arbitration agreement she executed was unconscionable. " 'Unconscionability has generally been recognized to include an absence of meaningful choice * * * on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. *Deutsche Bank Natl. Trust Co. v. Pevarski,* 187 Ohio App.3d 455, 2010-Ohio-785, 93 N.E.2d 887 (4th Dist.), at ¶ 30. Here, Appellee asserted unconscionability, arguing (1) the arbitration clause language provides that the arbitrator will be either "a retired judge or an attorney experienced in employment law"; (2) the arbitration agreement was electronically signed; and (3) the agreement was a prerequisite to

employment. The trial court's decision and judgment entry did not address the unconscionability argument but instead, limited its judgment to the narrow issue of whether Appellee's claim for sexual harassment was subject to arbitration. Accordingly, we decline to address Appellee's unconscionability argument within the scope of this appeal.

{¶30} In conclusion, based upon our de novo review, we disagree with the trial court's finding that Appellee's claim for sexual harassment does not come within the purview of the arbitration agreement. For the foregoing reasons, we find merit to Appellants' sole assignment of error and it is hereby sustained. We find the trial court erred as a matter of law in holding that Appellee's claim for sexual harassment does not fall within the scope of the parties' arbitration agreement because sexual harassment is a form of sexual discrimination. Accordingly, the judgment of the trial court is reversed.

**JUDGMENT REVERSED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE REVERSED and that Appellants recover of Appellee any costs herein.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.: Concur in Judgment Only.


For the Court,


BY: _____
Matthew W. McFarland, Judge


### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**