[Cite as *Klotz v. Game On Sports Bar & Grill*, 2022-Ohio-2847.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BRANDI KLOTZ, | : | APPEAL NO. C-210401<br>TRIAL NO. A-2002296 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| GAME ON SPORTS BAR & GRILL, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 17, 2022

*Freking Myers & Reul LLC* and *Kelly Mulloy Myers*, for Plaintiff-Appellant,

*Finney Law Firm, LLC,* and *Stephen E. Imm*, for Defendant-Appellee.

**WINKLER, Judge.**

{¶1}    Plaintiff-appellant Brandi Klotz appeals the decision of the Hamilton County Court of Common Pleas granting summary judgment to Klotz's former employer, defendant-appellant Game On Sports Bar & Grill ("Game On" or "bar"), on a sexual-harassment claim. Klotz alleged that she had been sexually harassed by a coworker such that she was subjected to a hostile-work environment and that Game On failed to take appropriate and timely action. Having reviewed the record, we affirm the trial court's judgment for Game On.

## I. Background Facts

{¶2}    Game On is a small bar and casual restaurant. Since July 2017, the bar has been owned and operated primarily by Hunter Hampton and Matthew Mann. At the time the bar was purchased from the prior owners, Klotz already worked at the bar and she retained her position as a bartender and server. Klotz then reported to Hampton, whom she considered to be "fair" and a "friend."

{¶3}    Joey McCoy was hired as a cook around early 2019. Klotz and McCoy generally worked at the same time for at least one eight-hour shift each week. Klotz closed the bar every Sunday and Monday night alone with the same regularly-scheduled cook. When that regularly-scheduled cook took two weeks of vacation and McCoy filled in, Klotz alleged that McCoy subjected her to sexual harassment.

{¶4}    Specifically, Klotz alleged that the sexually harassing conduct occurred on Sunday, June 9, 2019. According to Klotz, toward the end of the night, while she and McCoy were alone at Game On, McCoy "thrusted his pelvis area into her buttocks" on three occasions over a span of about five minutes. She did not allege that McCoy

had ever engaged in similar conduct or that he had ever said anything inappropriate to her.

{¶5}  A surveillance camera in the bar captured McCoy in close vicinity to Klotz at times as she closed out the cash register and he retrieved items near the register.  That video also showed Klotz laughing and smiling.  The video did not show McCoy thrusting his pelvis into Klotz's backside, but the camera only captured one angle.

{¶6}  On June 10, one day after the incident, Klotz reported her allegations to Hampton.  Hampton recalled that Klotz said McCoy had brushed up against her and made her feel uncomfortable.  Klotz recalled that she described it as intentional thrusting that had occurred three times.

{¶7}  When Klotz made her report to Hampton, he said that he would "take care of it." Klotz did not request any specific action or tell Hampton that she never wanted to work with McCoy again.  During this June 10 conversation, Hampton shared with Klotz that he had heard a few other employees had recently expressed concern about McCoy.

{¶8}  Hampton was referring to a conversation several days earlier with his wife, who was not an owner or employee of the bar.  His wife said that on June 5, when she was helping Game On employees create gift baskets to raffle after the funeral of a Game On employee, some female servers commented that McCoy had been in their "personal space" at the bar.  Hampton recalled that his wife told him about the "personal space" comments no later than June 7.

{¶9}  Hampton did not immediately investigate the "personal space" comments.  He explained, however, that the Game On community was experiencing

shock and sadness at that time due to the employee's death, an event Klotz described as a "tragic loss."

{¶10}   On June 11, one day after Klotz reported the June 9 incident, Hampton sent a group text message to all female employees at Game On stating:

> Hey girls I just want those involved and anyone else to know that I talked with [McCoy] last night about his inappropriate behavior and making some of you feel uncomfortable.  Please let me know if he continues to act the same and I will handle it.  That goes for anyone else at the bar also employee or customer.  I know you girls put up with a lot. Your safety and feeling comfortable at work is one of my top concerns. I can't do anything about it if I don't know about it tho[ugh].  So don't feel like you have to brush it off or just ignore it.  Communicate with me and I will handle it.  Thank you girls for all you do!

{¶11}   In response to this text message, Klotz simply replied, "Thank you."

{¶12}   Hampton provided background information about this text message, indicating that it referenced a conversation he had with McCoy on June 10, during which McCoy denied any inappropriate conduct.  Hampton said he warned McCoy that any further reports of this nature would result in his termination.

{¶13} Based on a work schedule created prior to Klotz's complaint to Hampton, Klotz and McCoy were to work alone together on Sunday, June 16.  On June 12, Klotz texted Hunter asking if she was still expected to close alone with McCoy. Hunter immediately replied, "That's your call."  He also offered to switch the schedule or be present at the bar during her shift.  Klotz did not reply to Hampton's text.

4

{**¶14**}  On June 16, a few hours before her bartending shift began, Klotz sent an email to Hampton expressing her concerns about the situation and how Hampton was handling it.  She specified that McCoy had "thrust his pelvis into my buttocks repeatedly three times," and asked if Hampton had viewed surveillance video of the incident.  She concluded the email with, "Telling me that you talked to him about it and will fire him if it happens again does little for me, honestly.  I feel like I'm waiting to be a victim (or another coworker is)."

{**¶15**}  Hampton immediately responded, "I'll be [at Game On] tonight.  You won't be scheduled with him moving forward.  I did look at the video from that night but didn't see when the incident occurred.  I will look at it again tonight when I am there for you."

{**¶16**}  Hampton arrived at the bar during Klotz's shift and again reviewed the surveillance video from the relevant period.  He reported to Klotz, consistent with the video, that he did not see the acts she alleged.  According to Hampton, he also offered to review the video with her after her shift so she could "walk [him] through what she felt or saw."

{**¶17**}  According to Klotz, Hampton told her that the incident was not "a big deal."  Klotz implied from Hampton's comments that Hampton did not believe her and that "there was going to be no further action taken."  She did not refute Hampton's testimony that he offered to view the video with her to obtain a better understanding of her complaint.

{**¶18**}  After her conversation with Hampton, Klotz texted a few coworkers about Hampton's conclusion.  She surmised that "the angle [of the video] probably sucks" and indicated that she was "probably going to quit."

5

**{¶19}** Towards the end of Klotz's shift, but while customers were still in the bar, Hampton asked Klotz to prepare for McCoy the free "shift drink" that is customarily prepared by the bartender for employees at the conclusion of their shifts. Klotz prepared the drink, set it on the bar in front of McCoy, and said to McCoy, "It's not an accident if it happens to multiple girls." An argument ensued between Klotz and McCoy, who denied any wrongdoing. Hampton told both to "knock it off" and then to "shut up." Klotz then told Hampton she was quitting and giving her two weeks' notice. Hampton told her not to return to work after her shift ended that night.

**{¶20}** That same evening Klotz posted information on social media concerning the dispute and requesting a boycott of Game On. The following day, Hampton reported Klotz's complaint to the local law enforcement agency and asked a retired police officer to review the video to obtain his opinion concerning McCoy's culpability. Hampton was told that the video did not reveal "anything wrong." No criminal charges were filed against McCoy from that investigation. Klotz did not pursue criminal charges on her own.

**{¶21}** On June 24, Game On posted about the dispute on Facebook. That post, which contained a link to the June 9 surveillance video, reads:

> Game On is aware of a social media post about sexual harassment alleged to have occurred at Game On. The allegations were brought to our attention the previous week and Game On management began investigating. After reviewing the surveillance video, speaking with both parties and gathering feedback from our team, we determined that no action was justified against the employee and the Game On staff was made aware of the decision.

## II. The Lawsuit and Law

**{¶22}** About one year later, on June 25, 2020, Klotz brought this sexual-harassment action against Game On. Game On answered and filed counterclaims against Klotz for tortious interference and defamation, counterclaims that related to Klotz's actions after her employment ended and that Game On subsequently dismissed.

### R.C. 4112.02 and Employer Liability for Sexual Harassment

**{¶23}** Klotz's cause of action against her former employer derives from the anti-discrimination protections afforded employees under R.C. 4112.02. The Ohio Supreme Court has recognized employer liability as follows:

> A plaintiff may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination "because of * * * sex" by proving either of two types of sexual harassment: (1) "quid pro quo" harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) "hostile environment" harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment.

*Hampel v. Food Ingredients Specialties*, 89 Ohio St.3d 169, 729 N.E.2d 726 (2000), paragraph one of the syllabus.

**{¶24}** Klotz alleged the second type of discrimination claim recognized by the *Hampel* court—hostile-environment harassment—based on McCoy's alleged conduct and Game On's allegedly inadequate response. With respect to that type of claim, the *Hampel* court further held that:

7

In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Id.* at paragraph two of the syllabus.

{¶25} Game On moved for summary judgment, arguing that Klotz could not establish the fourth element of her sexual-harassment claim where it was undisputed that McCoy was not Klotz's supervisor, and the evidence showed that Game On took prompt and adequate corrective action, action that undisputedly ended the alleged harassment. Secondarily, Game On argued Klotz could not establish the third element of her claim because McCoy's alleged misconduct was not severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive.

{¶26} In support of summary judgment, Game On filed the depositions of Klotz and Hampton, with exhibits containing written communications during the relevant period, and surveillance video of the bar from the night of June 9, 2019. In addition, Game On filed supporting affidavits from four female employees other than Klotz who worked with McCoy at Game On around the time of the claimed sexual harassment. This evidence was offered to show that the female employees who had complained to Hampton's wife about McCoy invading their "personal space" while

8

working in the "tight spaces" at the bar had not considered McCoy's conduct sexually motivated or sexual harassment. Instead, they characterized him as exhibiting a lack of "awareness of personal space." Further, those employees averred that they had never reported it to Hampton or any other manager or owner of the bar because they did not think it warranted reporting. This evidence corroborated Hampton's testimony that since July 2017, the onset of his ownership interest in and operation of the bar, Klotz was the only female employee to make a complaint of sexually-harassing conduct.

{¶27} In opposition, Klotz argued that when the evidence was viewed in the light most favorable to her, a reasonable juror could find that McCoy's conduct was severe or pervasive enough to satisfy the third element and Game On's response to her complaint, if any, was not prompt and remedial, satisfying the fourth element.

{¶28} The trial court subsequently granted Game On's motion for summary judgment. Klotz has appealed. In one assignment of error, she contends the trial court erred in granting summary judgment for Game On and dismissing her cause of action.

### IV. Analysis

{¶29} We review a grant of summary judgment de novo, applying the standards set forth in Civ.R. 56. *See Brandner v. Innovex, Inc.*, 2012-Ohio-462, 970 N.E.2d 1067, ¶ 13 (1st Dist.). Summary judgment is appropriate if the movant demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Civ.R. 56(C). This court will reverse a grant of summary judgment if the nonmoving party has presented evidence of facts

9

that, when viewed in the light most favorable to the nonmovant, indicate that there is a genuine issue for trial. *See id*.; *Brandner* at ¶ 13.

{¶30} The dispute in this case involves only the third and fourth elements of Klotz's hostile-environment claim. With respect to the third element of the claim, we assume, without deciding, that Klotz's deposition testimony contained sufficient facts to show that McCoy's conduct toward her on June 9 was sufficiently "severe or pervasive" to compromise Klotz's equal access to work such that it was actionable sexual harassment.

{¶31} Our focus then, is on the fourth element, which depends on the status of the harasser. It is undisputed that McCoy, the alleged harasser, was a coworker, not a supervisor. Where the case alleges an unlawful employment atmosphere of sexual harassment created not by a supervisor but coworkers, the employer is not automatically liable, under a vicarious-liability theory, but the employer will be liable only if the employer, or its agents, knew or should have known of the conduct and failed to take immediate and appropriate corrective action. *See Hampel*, 89 Ohio St.3d 169, 729 N.E.2d 726, at paragraph two of the syllabus. Thus, the victim of actionable workplace harassment by a coworker may hold the employer liable only for the employer's own negligence. *See Ohio Civ. Rights Comm. v. Akron Metro. Hous. Auth.*, 119 Ohio St.3d 77, 2008-Ohio-3320, 892 N.E.2d 415, ¶ 16-19, explaining *Hampel*.

{¶32} Although the cause of action relates to a violation of R.C. 4112.02(A), case law interpreting Title VII of the Civil Rights Act of 1964 is relevant. *See Hampel* at 175, cited in *Brandner*, 2012-Ohio-462, 970 N.E.2d 1067, at ¶ 14. The Eighth Circuit Court of Appeals recently summarized in concrete terms how an employer may be held liable:

In cases of coworker-on-coworker harassment, the employer is liable only if the employer's own negligence caused the harassment or led to the continuation of the hostile work environment.

(Internal citations omitted.) *Sellars v. CRST Expediated, Inc.*, 13 F.4th 681, 696 (8th Cir.2021); s*ee Vance v. Ball State Univ.*, 570 U.S. 421, 133 S.Ct. 2434, 186 L.Ed.2d 565 (2013) ("If the harassing employee is the victim's coworker, the employer is liable only if it was negligent in controlling working conditions.").

**{¶33}** The Sixth Circuit Court of Appeals has held an employee must show that the employer's response to the employee's complaints manifested an indifference or unreasonableness considering the facts the employer knew or should have known. *See, e.g., Wyatt v. Nissan N.Am., Inc.*, 999 F.3d 400, 417 (6th Cir.2021); *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir.2013); *Blankenship v. Parke Care Ctrs.*, 123 F.3d 868, 873 (6th Cir.1997.). "The act of discrimination by the employer in such a case is not the harassment, but rather the inappropriate response to the charges of harassment." *Blankenship* at 873, quoted in *Payton v. Receivables Outsourcing, Inc.,* 163 Ohio App.3d 722, 2005-Ohio-4978, 840 N.E.2d 236, ¶ 22 (8th Dist.).

**{¶34}** Klotz emphasizes that Game On lacked a written sexual-harassment policy. We do not condone this practice. The absence of a written sexual-harassment policy may eliminate an employer's affirmative defense in cases involving alleged supervisor sexual harassment, conduct otherwise imputed to an employer under a vicarious-liability standard. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

{¶35} This case, however, involves coworker-on-coworker harassment that implicates a negligence standard. We are not presented with facts suggesting that the owners of Game On created a sexually-charged atmosphere or permitted sexual harassment. Additionally, the evidence showed that Klotz made the complaint to Hampton despite the absence of a written policy, and the other female employees indicated in affidavits that they did not report their concerns about McCoy to Hampton because they did not feel it warranted reporting, not because of the lack of a written policy. Thus, it is too speculative to conclude in this case that the lack of written sexual-harassment policy caused the sexual harassment or led to the continuation of the claimed hostile-work environment.

{¶36} Determining the existence of an employer's negligence for this cause of action involves a two-step inquiry into whether (1) the employer had actual or constructive notice of the harassment and (2) the employer failed to take immediate and appropriate corrective action. *See Sellers*, 13 F.4th at 969; *Hampel*, 889 Ohio St.3d 169, 729 N.E.2d 726, at paragraph two of the syllabus.

{¶37} Klotz contends a jury could find that Game On had actual knowledge of her complaint of sexual harassment on June 10 and that, when all the facts are considered, including that Hampton had received reports of other unusual conduct involving McCoy, Game On did not take prompt and appropriate action.

{¶38} Game On maintains that when the facts are viewed in the light most favorable to Klotz, including the nature of the incident and the scope of her initial complaint to Hampton on June 10, one can only conclude that its response was timely and appropriate. Game On asserts that this court must consider all the facts, including that the video does not corroborate Klotz's claim of "thrusting," and conclude that

Hampton's multiple actions were reasonably aimed at ending, and undisputedly ended, any misconduct by McCoy that created the claimed hostile-environment sexual harassment. According to Game On, its response was diametrically opposed to the indifference or unreasonableness Klotz claims.

{¶39} Klotz's primary position on appeal is that Hampton's testimony that he gave McCoy a verbal warning on June 10 that any further reports of inappropriate conduct would result in his termination was rebutted by Game On's Facebook post on June 24, 2019, that "no action was justified against [McCoy.]" She also emphasizes the absence of any documentation of the warning in an employment file or evidence from McCoy acknowledging the warning. Thus, she argues the evidence, when viewed in the light most favorable to her, supports a finding that Game On took "no action" in response to her complaint.

{¶40} We agree with Game On that the only reasonable reading of the Facebook post in context was that Game On would not take *further* action against McCoy. The other evidence of the warning—Hampton's testimony about the oral warning to McCoy—was unequivocal and not rebutted.

{¶41} Klotz's position that the evidence could support a finding that Game On took "no action" is untenable for other reasons. The verbal warning to McCoy was only one of several timely actions Game On, through Hampton, claimed to have taken to stop any harassment. Hampton undisputedly contacted all the female employees and urged them to alert him to any behavior by McCoy, another employee, or a customer that the employees perceived to be "inappropriate" or that made them "uncomfortable," so that he could "handle it." He gave Klotz the option of never working alone with McCoy. He also went to the bar on June 17 to prevent Klotz from

13

being alone with McCoy on a prescheduled shift, even though McCoy denied any wrongdoing and the surveillance video did not evince the sexual assault alleged by Klotz in this lawsuit. Klotz did not rebut Hampton's testimony that he offered to view the video with her so that he could better understand her position.

{¶42} Instead of accepting Hampton's offer to review the video with Hampton, Klotz quit. At worst, the evidence showed that Hampton's investigation was still ongoing less than one week after Klotz told Hampton about her complaint, a week in which Hampton also warned the alleged harasser and took steps to prevent further harassment. This time frame was not unreasonable in the context of the other facts, including the inconclusiveness of the video. *See Lopez v. Whirlpool Corp.*, 989 F.3d 656, 664 (8th Cir.2021) (An employer must be afforded a reasonable time to investigate a complaint of sexual harassment.); *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 421 (8th Cir.2010) (21 days was a reasonable period of time for employer to investigate complaint of physical touching and sexual comments, formulate a remedy, and "effectively end[]" sexual harassment), cited in *Whirlpool* at 664.

{¶43} Finally, we note the record contains no evidence that McCoy engaged in any harassing conduct after Klotz reported the incident to her employer. When an employer has actual notice of coworker harassment, an employer generally is entitled to summary judgment on a sexual-harassment claim where the employer's response was aimed at preventing, and did prevent, future harassment. *See Thaman v. OhioHealth Corp.*, S.D.Ohio No. 2:03-cv-210, 2005 U.S. Dist. LEXIS 12872 (June 29, 2005); *McGraw v. Pilot Travel Ctrs., LLC*, 10th Dist. Franklin No. 11AP-699, 2012-Ohio-1076, ¶ 25-26. *See also Blankenship*, 123 F.3d at 873 ("When an employer

implements a remedy, it can be liable for sex discrimination in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination.").

{¶44} Here, the evidence demonstrates Game On took Klotz's allegation seriously by (1) issuing a warning to McCoy within hours of Klotz's complaint, (2) contacting Klotz and all the female servers to urge them to come forward immediately if they experienced anything inappropriate, and (3) taking steps to ensure that Klotz never had to be alone with McCoy again. These actions were undisputedly effective in preventing future harassment. *Compare Seiber v. Wilder*, 2d Dist. Greene No. 94CA32, 1994 Ohio App. LEXIS 4609 (Oct. 12, 1994) (Employer not entitled to summary judgment on issue of whether it breached duty to take corrective action where there was no specific evidence concerning counselling of alleged harasser, the harassment continued, the employer failed to reliably separate the employee from the harasser, including refusing to switch the employee to a different shift, and employee was mocked in employee meeting conducted to discuss sexual harassment).

{¶45} When this court makes all reasonable inferences in favor of and views all genuinely disputed facts most favorably to Klotz, we can conclude only that Game On's response was reasonable, and Klotz cannot show her employer "failed to take immediate and appropriate corrective action." *See Hampel*, 89 Ohio St.3d 169, 729 N.E.2d 726, at paragraph two of the syllabus.

## V. Conclusion

**{¶46}** Based on the record, we conclude no genuine issue of material fact exists as to whether Game On failed to take immediate and appropriate corrective action in response to Klotz's claim of sexual harassment, and therefore, Klotz's hostile-work-environment claim fails as a matter of law. Consequently, we overrule the assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BERGERON, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.